IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ARLEEN M. HARDIN SPARKS,

    Plaintiff,

vs.                                          Case No. 06-1037-JTM

JO ANNE BARNHART, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,

    Defendant.

MEMORANDUM AND ORDER

    Plaintiff filed the present action following a denial of her applications for disability insurance benefits and supplemental security income (SSI). For the following reasons, the court denies plaintiff's appeal.

*I. Factual Background:*

    Plaintiff filed the first set of applications for social security disability benefits on December 21, 2001. Plaintiff's applications were denied initially and upon reconsideration. Following the denial, the administrative law judge ("ALJ") ruled that plaintiff was ineligible for social security benefits. The Appeals Council of the Social Security Administration denied plaintiff's request for review, rendering the decision of the ALJ as the final decision of the Commissioner.

    Plaintiff appeals the decision of the ALJ on two bases. First, plaintiff alleges that the ALJ failed to consider relevant evidence in assessing her residual functional capacity ("RFC"),

including the opinions of treating physicians.  Additionally, plaintiff argues that the ALJ erred in determining that plaintiff's RFC permitted her to perform other work found in the national economy.

*II. Standard of Review:*

This court's review of the Commissioner's determination is limited.  *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1497 (10th Cir. 1992).  The responsibility of this court is to determine whether the decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.  Reversal is appropriate if the agency fails to apply the correct legal standards or fails to demonstrate reliance on the correct legal standards.  *Hamlin*, 365 F.3d at 1114.

*III.  Conclusions of Law:*

Under 20 C.F.R. § 404.1512(a), plaintiff must demonstrate that she was unable to work because of a medically determinable impairment which lasted for a continuous period of at least 12 months.  *See* 20 C.F.R. § 404 1512(a).  *See also Mathews v. Eldridge*, 424 U.S. 319, 339 (1976); *Barnhart v. Walton*, 535 U.S. 212 (2002) (upholding the Commissioner's interpretation of the statutory definition which requires that the disability, not only the impairment, must have existed or be expected to exist for 12 months).

In demonstrating the existence of a determinable impairment lasting for a continuous period of at least 12 months, the Commissioner's regulations set forth a five-step sequential evaluation process (SEP) which the Commissioner must use in assessing disability claims. *See* 20 C.F.R. § 404.1520 (2005). In steps 1-3, the ALJ must determine whether plaintiff is engaged in substantial gainful activity, whether she has a medically determinable impairment that is "severe" under the Act, and whether plaintiff suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, supt. P, app.1. *Id*.

At step four of the process, the ALJ must address three phases in making a determination. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). The first phase requires an evaluation of the claimant's residual functional capacity (RFC). *Id.* at 1023. The second phase entails an examination of the demands of the claimant's past relevant work. *Id*. In the third phase, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id*. Specific findings are required at all phases. *Id*.

In the present case, the ALJ determined that plaintiff suffered from active hepatitis C, major depression, mixed personality disorder with posttraumatic stress disorder, and substance abuse in remission, which were "severe" impairments under the Act. Transcript, pg. 36. However, the ALJ found that plaintiff did not meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing of Impairments. *Id*.

After a review of the evidence of record, the ALJ determined that plaintiff's allegations regarding her limitations were not totally credible. *Id*. at 37. At step four, following a review of the total medical record, the ALJ determined plaintiff's RFC to consist of a range of light work,

with lifting or carrying 10 pounds frequently and 20 pounds occasionally, sitting about 6 hours in an 8 hour work day, and standing or walking about 6 hours in an 8 hour work day with occasional postural limitations regarding climbing, balancing, stooping, kneeling, crouching, and crawling.  *Id*.  Plaintiff's mental limitations included moderate limitations in the ability to: 1) maintain attention and concentration for extended periods; 2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 4) ability to respond appropriately to changes in the work setting; and 5) accept instructions and respond appropriately to criticism from supervisors.  *Id*.

In the second and third phases of step four, the ALJ determined that plaintiff did not have past relevant work to which she could return.  *Id*.  Based on her age, work history, education, and RFC, a qualified vocational expert testified that plaintiff retained the capacity to perform jobs such as a raker, cleaner, and fast food worker.  *Id*. at 36.  Therefore, the ALJ determined that plaintiff retained the ability to perform work found in significant numbers in the national economy.  *Id*.  Based upon this finding, the ALJ held that plaintiff was not disabled as part of the SEP.

*A.  Step Four Challenge – Phase One:*

Plaintiff generally argues that the ALJ improperly assessed the credibility of her subjective complaints.

In evaluating subjective complaints, the Tenth Circuit, in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), stated that courts must weigh the following: (1) whether claimant proves with

objective medical evidence an impairment that causes pain; (2) if so, whether a loose nexus exists between the impairment and the subjective complaints of pain; and (3) if so, whether the pain is disabling based upon all objective and subjective evidence. The ALJ must consider fully all evidence relating to the claimant's subjective complaints, including such factors as the claimant's activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; the existence of any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications taken by the claimant to relieve symptoms; any measures other than medication taken by the claimant to relieve symptoms; and any other factors concerning the functional limitations of the claimant. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir.1988) (ALJ may consider claimant's daily activities in determining whether he is entitled to disability benefits); *Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000) (ALJ may properly consider what attempts plaintiff has made to relieve his pain, including whether he took pain medication, in evaluating his credibility).

*1. Lay witnesses:*

Specifically, plaintiff argues that the ALJ failed to sufficiently discuss statements by several lay witnesses, including her grandmother, a friend, a social security employee who took her claim and her former manager. Plaintiff's Brief, pg. 34.

Credibility determinations are the province of the ALJ, "the individual optimally positioned to observe and assess witness credibility." *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (quoting *Casias v. Secretary of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). However, the Tenth Circuit has declined to adopt a ruling requiring an ALJ to make specific written findings of each witness's credibility. *Id*.

Plaintiff's claim that the ALJ failed to specifically discuss statements by the lay witnesses is without merit.  The ALJ is not required to make specific written findings regarding each witness's credibility.  Furthermore, plaintiff has failed to demonstrate that the ALJ erred in his findings or prejudiced plaintiff.  Plaintiff has failed to show that the ALJ's ultimate decision was not based on substantial evidence.  *See St. Anthony v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002) ("[T]he party challenging the action below bears the burden of establishing that the error prejudiced the party.").

*2. Medical opinions:*

Furthermore, plaintiff alleges that the ALJ did not follow proper procedures in evaluating various medical opinions.  The court will discuss each of plaintiff's specific objections accordingly.

*a. Dr. Reed:*

Plaintiff's treating physician, Dr. Reed, began seeing plaintiff for counseling sessions in August 2004.  In March 2005, after eight sessions, Dr. Reed completed a mental medical source statement in which he opined that plaintiff suffered from moderate limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal day and work week without psychological interruptions or an unreasonable number or length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without

distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting.  Transcript, pp. 777-78.

The ALJ's RFC reflects that he adopted the majority of these moderate limitations.  *Id*. at 37.  Although the ALJ's RFC did not include Dr. Reed's findings that plaintiff would have difficulty remembering and carrying out detailed instructions, Dr. Reed indicated plaintiff retained the ability to perform simple instructions for the types of unskilled work the ALJ determined plaintiff could perform at step five.  *Id*. at 777, 908.  Additionally, while the ALJ included within the RFC that plaintiff would have moderate difficulty getting along with supervisors, the ALJ did omit Dr. Reed's opinion that plaintiff would distract co-workers and have difficulty getting along with others.  *Id*. at 777-78, 908.  However, the ALJ's decision reflects that he included limitations within his decision that reflected the record as a whole.  *See Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) (it is within the ALJ's province to weigh and resolve evidentiary conflicts and the reviewing court will not re-weigh the evidence).

*b.  Dr. Reddy:*

Plaintiff also argues that the ALJ improperly rejected the opinion of Dr. Reddy, a psychiatrist who managed plaintiff's medications and visited with plaintiff at Dr. Reed's request.  Specifically, plaintiff argues that it was inappropriate for the ALJ to cite the fact that Dr. Reddy had only seen plaintiff a few times as part of his assessment of the doctor's opinion, when in fact medical records suggest the doctor had actually seen plaintiff on four occasions.

The ALJ's decision to omit Dr. Reddy's opinion was proper as the doctor saw plaintiff only a few times.  A physician will be considered a treating source if the physician has seen the

claimant "a number of times and long enough to have obtained a longitudinal picture of the claimant's impairment." *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003).

Plaintiff also asserts that the ALJ was under a duty to contact Drs. Reddy and Reed if he disagreed with them. However, the ALJ's decision reflects that he included Dr. Reed's opinion in large part within his analysis and refused to weigh Dr. Reddy's opinion because the doctor saw plaintiff less frequently. Moreover, the ALJ is not obligated to contact a doctor when he declines to follow the doctor's opinion. "[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002) (citing 20 C.F.R. § 416.912(e)).

Additionally, plaintiff asserts that the ALJ improperly refused to defer to the opinion of another treating physician, Dr. Hesse. However, the court finds that the ALJ applied the correct legal standard in formulating the RFC, despite his refusal to defer to Dr. Hesse's medical opinion. *See White*, 287 F.3d at 908 (ALJ"s role is to weigh various medical opinions).

*c. Consultative doctors:*

Plaintiff also argues that the medical opinions of Drs. Liebenau, Boll, Dipelou, and Moeller were not properly considered by the ALJ.

Specifically, plaintiff notes that the ALJ inadequately assessed opinions by Drs. Liebenau and Boll from 2001 and 2002 respectively. Upon an examination of the record, these examinations were consistent with plaintiff's treating physician, Dr. Reed. Furthermore, the ALJ may give more weight in his opinion to plaintiff's treating physician's opinion. *Talbot v.*

*Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987). Therefore, the court fails to find an error in the ALJ's opinion with respect to the treatment of these medical opinions.

Plaintiff also asserts that the ALJ was obligated to order a consultative examination for intelligence testing due to Dr. Boll's statement that plaintiff should not be permitted to manage her own funds. The question to consider when ordering a consultative examination is whether the record contains sufficient medical evidence for the Commissioner to make an informed decision as to the claimant's alleged impairment. *See Robertson v. Chater*, 900 F. Supp. 1520, 1530 (D. Kan. 1995). The plaintiff's RFC, however, reflects that plaintiff's mental impairments left her significantly restricted. Plaintiff cites no recommendation from any doctor that she should undergo intelligence testing, nor did plaintiff request that the ALJ order further testing. Due to these facts and that the ALJ is given "broad latitude" in determining whether a consultative examination is appropriate, plaintiff's argument is without merit. *See Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997); *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990).

Next, plaintiff argues that the ALJ did not adequately consider the opinion of Dr. Dipelou. Plaintiff cites that Dr. Dipelou concluded that plaintiff retained the ability to understand questions and instructions, but that her profound interpersonal difficulties would render her unable to perform even the most simple forms of work. However, as the court previously explained, the ALJ may give more controlling weight to a treating physician. *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987). Therefore, the court finds no error in the ALJ's opinion regarding the omission of this consulting doctor's opinion.

Finally, plaintiff disagrees with the ALJ's decision to include Dr. Moeller's report. Plaintiff argues that Dr. Moeller was the only doctor who felt plaintiff over-endorsed her symptoms. The court refuses to overturn the ALJ's decision with respect to the inclusion of Dr. Moeller's report in that it was proper for the ALJ to note the doctor's extensive and well-documented examination as the ALJ conducted his own credibility analysis. *See White*, 287 F.3d at 908 (ALJ"s role is to weigh various medical opinions).

*f. Non-examining physicians:*

Plaintiff also urges the court to consider the opinions of various non-examining physicians who routinely review medical records as part of the Commissioner's disability determination process. Specifically, plaintiff notes that the ALJ omitted several of these doctors' opinions, particularly Dr. Hough's opinion. The ALJ may give little weight to non-examining doctors unless the opinions are well-supported and consistent with other opinions in the record. See, e.g., Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). The court finds that the ALJ properly omitted Dr. Hough's opinion. Additionally, plaintiff notes that the ALJ improperly relied on Dr. Vupatm's opinion. The ALJ may assign more weight to a treating physician. *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987). Therefore, the court finds that the ALJ properly included the opinion of Dr. Michael Yim, plaintiff's treating physician.

*B. Step Four Challenge – Phases Two Through Three:*

Finally, plaintiff alleges that the ALJ failed to apply the appropriate legal test in expressing plaintiff's RFC.

As set out above, the ALJ determined plaintiff retained the residual functional capacity for a range of light work, with lifting or carrying 10 pounds frequently and 20 pounds occasionally, sitting about 6 hours in an 8 hour work day, and standing or walking about 6 hours in an 8 hour work day with occasional postural limitations regarding climbing balancing, stooping, kneeling, crouching, and crawling. Transcript, pg. 37. The ALJ also noted that plaintiff's mental limitations included moderate limitations in the ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to respond appropriately to changes in the work setting; and accept instructions and respond appropriately to criticism from supervisors. *Id*. Following the finding of plaintiff's RFC, the ALJ determined plaintiff did not have any past relevant work to which she could return. Due to this finding, the ALJ relied on the vocational expert to determine the jobs for which an individual with the same age, work experience, education, and limited residual functional capacity as plaintiff could work.

The court finds that the ALJ properly determined that plaintiff could perform jobs such as a raker, cleaner, or fast food worker. *See Johnson v. Finch*, 437 F.2s 1321, 1324 (10th Cir. 1971). Furthermore, as the court has previously noted, the ALJ considered all relevant evidence of record in order to determined plaintiff's RFC. For these reasons, the court finds that the ALJ applied the correct legal standards and substantial evidence supports his decision. Therefore, plaintiff's appeal is denied.

IT IS ACCORDINGLY ORDERED this 11th day of January that plaintiff's appeal is denied.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE

12